IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **John Barrow**, | Case No. 1:24-cv-01975-MLB |
| Plaintiff, | |
| vs. | |
| **Stacey Hydrick, James Balli,** and **Warren Selby,** in their official capacities as members of the Special Committee on Judicial Election Campaign Intervention of the Judicial Qualifications Commission, | **Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction** |
| Defendants. | |

Plaintiff John Barrow respectfully moves the Court for a temporary restraining order and preliminary injunction prohibiting the defendants from enforcing Georgia's Code of Judicial Conduct in a manner that violates the First and Fourteenth Amendments to the United States Constitution.

## Background[1]

This is a constitutional challenge to Georgia's Code of Judicial Conduct in the context of a hotly contested race for a seat on Georgia's Supreme Court. The plaintiff is John Barrow, a former member of Congress from Georgia and a current candidate for Justice of the Supreme Court of Georgia. Mr. Barrow has made reproductive rights the centerpiece of his campaign against the incumbent Justice Andrew Pinson. He alleges that certain parts of the Code, as applied to him by the defendants, violate Free Speech rights guaranteed to him by the First and Fourteenth Amendments to the United States Constitution. Mr. Barrow seeks declaratory and injunctive relief prohibiting the defendants from enforcing the Code in a manner that violates his constitutional rights.

## I.    Georgia's Rules on Campaigns for Judicial Office

Justices of the Supreme Court of Georgia are elected by popular vote to six-year terms in nonpartisan elections. Ga. Const., art. VI, § VII, ¶ I(a). Georgia's Judicial Qualifications Commission ("JQC"), operating

---

[1] Unless otherwise noted, all facts come from the plaintiffs' verified complaint.

through its Special Committee on Judicial Election Campaign Intervention ("Special Committee"), monitors judicial elections for compliance with Canon 4 of Georgia's Code of Judicial Conduct.

Canon 4 of the Code generally prohibits judges from engaging in "[p]olitical [a]ctivity [i]nappropriate [t]o [t]heir [j]udicial [o]ffice." Ga. Code Jud. Conduct Canon 4. Rule 4.2 of the Code addresses "Campaign Conduct." Ga. Code Jud. Conduct R. 4.2.

Rule 4.2(A)(2) provides that judicial candidates "shall not make statements or promises that commit the candidate with respect to issues likely to come before the court that are inconsistent with the impartial performance of the adjudicative duties of judicial office." Ga. Code Jud. Conduct R. 4.2(A)(2). Rule 4.2(A)(3) provides that judicial candidates "shall not use or participate in the publication of a false statement of fact, or make any misleading statement concerning themselves or their candidacies, or concerning any opposing judicial candidate or candidacy, with knowledge of the statement's falsity or with reckless disregard for the statement's truth or falsity." Ga. Code Jud. Conduct R. 4.2(A)(3).

JQC Rule 29 is the mechanism through which the JQC enforces Rule 4 during judicial elections. Rule 29 provides that in every year in

which a general election is held, the Chair of the JQC shall name three JQC members to the Special Committee "whose responsibility shall be to deal expeditiously with allegations of ethical misconduct in campaigns for judicial office." Ga. R. Jud. Qual. Comm'n 29(A).

During judicial election campaigns, the Director of the JQC forwards to the Special Committee all complaints received by the JQC that facially indicate a violation of Canon 4 by a judicial candidate. *Id.* R. 29(B). If the Special Committee determines that further investigation is necessary, it requests a response from the subject of the complaint within three business days. *Id.* If, after further investigation, the Special Committee determines that the allegations warrant speedy intervention, the Special Committee may issue a public statement setting out the violations believed to exist and/or refer the matter to a full investigative panel of the JQC for further action. *Id.*

If the investigative panel of the JQC determines after a full investigation that violates of the Code exist, the panel can impose a variety of sanctions, including removal or suspension from office, censure, public reprimand, and "other appropriate disciplinary action." *Id.* R. 6(B); *see also id.* R. 17(D).

4

Rule 8.2(b) of Georgia's Rules of Professional Conduct provides that "[a] lawyer who is a candidate for judicial office shall comply with the applicable provisions of the Code of Judicial Conduct." Ga. R. Pro. Conduct 8.2(b). The maximum penalty for a violation of Rule 8.2 is disbarment. *Id.*

## II.   Georgia's Investigation of Barrow's Campaign

On Wednesday, May 1, 2024, the Director of the JQC notified Mr. Barrow by letter that a complaint had been initiated against him for statements he made during the course of his campaign. *See* Compl. Ex. 1 (ECF 1-1) (notice letter). The letter alleges that certain statements or comments made by Barrow during the course of his campaign violate Rules 4.2(A)(2) and (3). The letter also alleges violations of Rule 1.2(A), which provides that "[j]udges shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary," Ga. Code Jud. Conduct R. 1.2(A), and Rule 2.10(B), which provides that "[j]udges shall not, in connection with cases, controversies, or issues that are likely to come before the court, make promises or commitments that are inconsistent with the impartial

performance of the adjudicative duties of judicial office," Ga. Code Jud. Conduct R. 2.10(B).

Specifically, the notice letter takes issue with seven statements made by or attributed to Mr. Barrow. First, the letter alleges that the following statement appearing on Mr. Barrow's website, campaign announcement, and Facebook page violates Rules 1.2(A), 4.2(A)(2), and 4.2(A)(3):

> [I'm] running because we need Justices on the Georgia Supreme Court who will protect the right of women and their families to make the most personal family and healthcare decisions they'll ever make. Despite many fine qualities, it's obvious from his record that the incumbent, Justice Pinson, cannot be counted on to do that.

Compl. Ex. 1 at 1 (ECF 1-1).

Second, the letter alleges that the following statement appearing on Mr. Barrow's campaign website and Facebook page violates Rules 1.2(A) and 4.2(A)(3): "[w]e can't expect Pinson to fight for our interests now that he's been appointed to the only court that can stop what he helped start." *Id.* at 2.

Third, the letter alleges that the following statement appearing in a campaign commercial for Mr. Barrow violates Rules 1.2(A), 2.10(B), 4.2(A)(2), and 4.2(A)(3):

> now I'm running for the Georgia Supreme Court to protect
> our personal freedoms, including the freedom of women to
> make their own medical decisions, like abortion, fertility,
> and birth control. Politicians shouldn't be making your
> private medical decisions. Remember to vote in the
> Supreme Court race and I'll protect your rights.

*Id.*

Fourth, the letter alleges that the following statement attributed to Mr. Barrow in the media violates Rules 1.2(A), 2.10(B), 4.2(A)(2), and 4.2(A)(3): "Georgians have a state constitutional right to abortion and [ ... ] voters would boost their chances of restoring broader access to abortion by doing something they've never done before: defeating an incumbent state justice." *Id.*

Fifth, the letter alleges that the following statement attributed to Mr. Barrow in the media violates Rules 1.2(A) and 4.2(A)(3):

> I happen to believe that the Georgia Constitution does
> provide a right of privacy, and that encompasses
> everything that we associate with what was the law under
> Roe v. Wade. And then it's probably wider[ ... ] that would
> mean the current statute, the current ban we're living
> with right now, violates that provision of the
> Constitution.

*Id.* at 3.

Sixth, the letter alleges that the following statement appearing on Mr. Barrow's Facebook page violates Rules 1.2(A), 4.2(A)(2), and

4.2(A)(3): "Vote John Barrow for Georgia Supreme Court to keep the rights of healthcare decisions in the hands of women and families!" *Id.*

Seventh, and finally, the letter alleges that the following statement appearing on Mr. Barrow's Facebook page violates Rules 1.2(A) and 4.2(A)(3): "Georgia cannot be the first state to lose a special election around reproductive rights! Vote for John Barrow for Georgia Supreme Court." *Id.* at 3-4.

In the letter, the Special Committee asks Mr. Barrow to respond to the allegations by Monday, May 6, 2024, at 5:00 p.m., and to "<u>immediately</u> bring all campaign-related materials, information, and advertisements into compliance with the Code and any applicable JQC formal advisory opinions." *Id.* at 4.

## Legal Standard

A plaintiff seeking a temporary restraining order or a preliminary injunction must demonstrate that: (1) there is a substantial likelihood of success on the merits; (2) it will suffer irreparable injury if relief is not granted; (3) the threatened injury outweighs any harm the requested relief would inflict on the non-moving party; and (4) entry of relief would serve the public interest. *See, e.g., Winter v. Nat. Res. Def. Council, Inc.*,

555 U.S. 7, 20 (2008); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc); *Windsor v. United States*, 379 F. App'x 912, 916-17 (11th Cir. 2010) (standard for obtaining TRO is identical to that for a preliminary injunction).

## Discussion

### I.   Mr. Barrow is likely to succeed on the merits.

The First Amendment to the United States Constitution provides that "Congress shall make no law ... abridging the freedom of speech...." U.S. Const. amend. I. This prohibition has been incorporated into the Fourteenth Amendment so that it also applies to state governments. *See Weaver v. Bonner*, 309 F.3d 1312, 1318 (11th Cir. 2002).

Because a candidate's speech during an election campaign "occupies the core of the protection afforded by the First Amendment," restrictions on a candidate's speech are subject to strict scrutiny. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995); *accord Weaver*, 309 F.3d at 1318. Under strict scrutiny, the government has the burden of proving that the restriction is "(1) narrowly tailored, to serve (2) a compelling state interest." *Republican Party of Minnesota v. White*, 536 U.S. 765, 774-75 (2002); *see also Brown v. Hartlage*, 456 U.S. 45, 53–

54 (1982) ("When a State seeks to restrict directly the offer of ideas by a candidate to the voters, the First Amendment surely requires that the restriction be demonstrably supported by not only a legitimate state interest, but a compelling one, and that the restriction operate without unnecessarily circumscribing protected expression."); *Weaver*, 309 F.3d at 1319 (quoting *White* and *Brown*). For the government to show that the challenged restrictions are narrowly tailored, it must show that the restrictions do not "unnecessarily circumscrib[e] protected expression." *Brown*, 456 U.S. at 54.

**A.     Rule 4.2(A)(2) – Statements on Issues**

Rule 4.2(A)(2) of the Code of Judicial Conduct provides that judicial candidates "shall not make statements or promises that commit the candidate with respect to issues likely to come before the court that are inconsistent with the impartial performance of the adjudicative duties of judicial office." Ga. Code Jud. Conduct R. 4.2(A)(2). It proscribes much the same speech as Minnesota's "announce clause" struck down in *White. See* 536 U.S. at 770 (candidates for judicial office shall not "announce his or her views on disputed legal or political issues.").

10

There, the Supreme Court held that the announce clause couldn't be justified by the State's compelling interest in impartiality. *Id.* at 775-77. "Impartiality," the Supreme Court explained, "is the lack of bias for or against either *party* to the proceeding." *Id.* at 775. In other words, impartiality guarantees that the judge who hears a case will apply the law in the same way that she applies it to any other party. *Id.* at 776. But impartiality doesn't mean that a judge can't have views on *issues*:

> [W]hen a case arises that turns on a legal issue on which the judge (as a candidate) had taken a particular stand, the party taking the opposite stand is likely to lose. But not because of any bias against that party, or favoritism toward the other party. Any party taking that position is just as likely to lose. The judge is applying the law (as he sees it) evenhandedly.

*Id.* at 776-77. The Supreme Court found that Minnesota's announce clause was "barely tailored" to serve the State 's compelling interest in preserving the impartiality of the judiciary because "it does not restrict speech for or against particular *parties*, but rather speech for or against particular *issues*." *Id.* at 777.

After *White*, it is well established that "judicial candidates are not prohibited, and cannot be prohibited, from announcing their views on disputed legal or political issues." *N.D. Family All., Inc. v. Bader*, 362 F.

11

Supp. 2d 1021, 1039 (D.N.D. 2005). While Mr. Barrow's statements cited in the notice letter certainly express views on legal and political issues —particularly issues of reproductive rights—none of them suggest any bias for or against any particular parties. As a result, the Special Committee's application of Rule 4.2(A)(2) to Mr. Barrow cannot withstand constitutional scrutiny.

The notice letter suggests, however, that the Special Committee's concern with Mr. Barrow's statements is not that he has expressed his views but rather that he has done so "without also emphasizing the duty of a judge to uphold the Constitution and laws of Georgia," and because those statements constitute "made pledges/promises/commitments related to highly sensitive cases/controversies/issues which are likely to come before the Georgia Supreme Court." Compl. Ex. 1 at 4 (ECF 1-1). But these suggestions make no difference here.

First, Rule 4.2(A)(2) doesn't require any magic words before a candidate can express views on issues, and, even if it did, the magic words themselves would have to survive strict scrutiny as a further restriction on core political speech. *See White,* 536 U.S. at 781; *Weaver,*

309 F.3d at 1319. And, as the Supreme Court explained in *White*, these particular magic words aren't even true: "Not only do state-court judges possess the power to 'make' common law, but they have the immense power to shape the States' constitutions as well." 536 U.S. at 784. If elected, Mr. Barrow would indeed have power to uphold Georgia law *as he understands it*. The announce clause struck down in *White* included a similar proviso that judicial candidates could "state their view that prior decisions were erroneous only if they do not assert that they, if elected, have any power to eliminate erroneous decisions." *Id.* at 772. That wasn't enough to save the restriction there, and neither can the Special Committee's magic-words limitation save the restriction here.

Second, the Special Committee's assertion that Mr. Barrow's statements constitute "pledges/promises/commitments" on "cases/controversies/issues" that may come before the Georgia Supreme Court is likewise unavailing. Mr. Barrow's campaign statements don't contain any promissory statements such as "If elected, I will vote to strike down Georgia's abortion ban." *See, e.g., White*, 536 U.S. at 780. But even if they did, "one would be naive not to recognize that

campaign promises are—by long democratic tradition—the

least binding form of human commitment." *Id.* It's no surprise, then,

that the Supreme Court has cast doubt on whether a campaign-speech

restriction that is limited to "pledges and promises" would pass

constitutional muster.

     While it remains to be seen what, if any, interests the State will

assert to defend the Special Committee's action against Mr. Barrow,

*White* strongly suggests that the defendants won't be able to meet their

burden of satisfying strict scrutiny.

**B.    Rule 4.2(A)(3) – False or Misleading Statements**

     Rule 4.2(A)(3) of the Code of Judicial Conduct provides that

judicial candidates "shall not use or participate in the publication of a

false statement of fact, or make any misleading statement concerning

themselves or their candidacies, or concerning any opposing judicial

candidate or candidacy, with knowledge of the statement's falsity or with

reckless disregard for the statement's truth or falsity." Ga. Code Jud.

Conduct R. 4.2(A)(3). It is substantially similar to the former Canon

7(B)(1)(d) of Georgia's Code of Judicial Conduct, which the Eleventh

Circuit struck down in *Weaver*, except that the Rule now includes a knowledge or reckless-disregard requirement. *See* 309 F.3d at 1315.

In *Weaver*, the Eleventh Circuit held that the Canon couldn't be justified by the State's asserted interests in "preserving the integrity, impartiality, and independence of the judiciary," and "ensuring the integrity of the electoral process and protecting voters from confusion and undue influence." While the court assumed that the interests were compelling, it concluded that the Canon wasn't narrowly tailored to serve those interests because it failed to "afford the requisite 'breathing space' to protected speech." *Id.* at 1319.

In reaching that conclusion, the Eleventh Circuit relied heavily on the Supreme Court's decision in *Brown*, which held that inaccurate campaign statements are protected speech. The Court explained that "erroneous statement is inevitable in free debate, and ... it must be protected if the freedoms of expression are to have the 'breathing space' that they need ... to survive." 456 U.S. at 60–61 (cleaned up). "The chilling effect of ... absolute accountability for factual misstatements in the course of political debate is incompatible with the atmosphere of free discussion contemplated by the First Amendment in the context of

15

political campaigns." *Id.* at 61. Because there had been no showing that Brown made his erroneous campaign statement knowing that it was false or that he made the statement with reckless disregard as to its falsity, the Court held that the restriction at issue was unconstitutional as applied to him. *Id.* at 61.

Relying on *Brown*, the Eleventh Circuit suggested in *Weaver* that "to be narrowly tailored, restrictions on candidate speech during political campaigns must be limited to false statements that are made with knowledge of falsity or with reckless disregard as to whether the statement is false—i.e., an actual malice standard." 309 F.3d at 1319. After *Weaver*, then, a State could likely restrict false statements made with actual malice without running afoul of the First Amendment.

Of course, Rule 4.2(A)(3) goes well beyond that. It proscribes not only false statements but also "misleading" statements. Ga. Code Jud. Conduct R. 4.2(A)(3). Or, as the Eleventh Circuit put it in *Weaver*: "true statements that are misleading or deceptive." 309 F.3d at 1319. Misleading statements, because they are true, are entitled to greater protection than false statements and must therefore be afforded more

"breathing room" under the First Amendment. *See Brown*, 456 U.S. at 60; *Weaver*, 309 F.3d at 1319; *see also, e.g., Winter v. Wolnitzek*, 834 F.3d 681, 694 (6th Cir. 2016) (holding that Kentucky's judicial ethics canon restricting judicial candidates from making "misleading" statements was facially unconstitutional).

Here, the Special Committee alleges that four of the seven campaign statements at issue violate Rule 4.2(A)(3) only because they are "misleading"—not because they are false. Compl. Ex. 1 at 2-4) (ECF 1-1.) These applications of the Rule are thus patently unconstitutional.

As to the remaining three applications of the Rule, the Special Committee makes no allegation that Mr. Barrow made the statements other than in good faith, with knowledge that the statements are false, or with reckless disregard as to whether the statements are false or not. *Id.* at 3-4. And it's easy to see why.

The Special Committee claims that the following two statements violation the Rule because they contain a "false statement regarding the current status of Georgia law" :

> Georgians have a state constitutional right to abortion and [ ... ] voters would boost their chances of restoring broader access to abortion by doing something they've never done before: defeating an incumbent state justice.

and

> I happen to believe that the Georgia Constitution does
> provide a right of privacy, and that encompasses
> everything that we associate with what was the law under
> Roe v. Wade. And then it's probably wider[ ... ] that would
> mean the current statute, the current ban we're living with
> right now, violates that provision of the Constitution.

*Id.* at 2-3. But neither of these statements is demonstrably false. They

are statements of opinion as to the proper interpretation of existing

parts of the Georgia Constitution. They reflect precisely the kind of core

political speech that the Supreme Court found to be protected in *White*.

They certainly do not satisfy the actual malice standard, and applying

the Rule to these statements is therefore unconstitutional.

Lastly, the Special Committee takes issue with this statement:

"Georgia cannot be the first state to lose a special election around

reproductive rights! Vote for John Barrow for Georgia Supreme Court."

*Id.* at 3-4. The Special Committee alleges that this statement violates

the Rule because "this election is not 'a special election around

reproductive rights.'" *Id.* at 4. But this statement, too, is a statement of

opinion. Mr. Barrow's view is that the election is special because it gives

Georgia voters the opportunity to make a choice between candidates

with diverging views on reproductive rights. He is not suggesting that

18

the upcoming nonpartisan election is a "special election" as defined in

the Georgia Code. He's saying that the election is a special one because

of the issues at stake. Applying Rule 4.2(A)(3) to silence that kind of

message violates the First Amendment.

**C.      Rule 1.2(A) – Public Confidence in the Judiciary**

Rule1.2(A) provides that "[j]udges shall act at all times in a

manner that promotes public confidence in the independence, integrity,

and impartiality of the judiciary," Ga. Code Jud. Conduct R. 1.2(A)

D. Rule 2.10(B). The Special Committee claims that all seven of Mr.

Barrow's statements at issue violate this Rule, but it only explains the

nature of the violations by referring to the replantation given for the

*other* rules. Compl. Ex. 1 at 1-4 (ECF 1-1). This Rule is, in other words,

entirely duplicative of the other alleged violations.

Although it remains to be seen what interest the State will offer to

support its application of the Rule here, the Supreme Court in *White*

found that the State's asserted interest in "preserv[ing] public confidence

in the judiciary" was insufficient to justify the restriction at issue there.

536 U.S. at 775 & n.6; *see also id.* at 793 (Kennedy, J., concurring)

("Minnesota has sought to justify its speech restriction as one necessary

to maintain the integrity of its judiciary."). No court of which the plaintiff is aware has ever upheld a restriction on core political speech as necessary to promote public confidence in a state's judiciary. The Special Committee is therefore unlikely to satisfy strict scrutiny here.

### D.     Rule 2.10(B) – Commits Clause

Finally, Rule 2.10(B) provides that "[j]udges shall not, in connection with cases, controversies, or issues that are likely to come before the court, make promises or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office," Ga. Code Jud. Conduct R. 2.10(B). At least three courts of appeals have addressed virtually identical language in the context of pre-enforcement facial challenges. *See Winter,* 834 F.3d st 694-95; *Bauer v. Shepard,* 620 F.3d 704, 713-17 (7th Cir. 2010); *Kansas Jud. Rev. v. Stout*, 562 F.3d 1240, 1246-47 (10th Cir. 2009) (finding that the facial challenge was moot). Here, we have an as-applied challenge to an actual enforcement action.

No one questions whether Georgia could prohibit judges from promising to decide certain specific cases in a certain way. But Rule 2.10(B) does much more than that by forbidding a judge from making

promises or commitments about controversies and issues as well—as long as those issue-commitments are inconsistent with the impartial performance of the adjudicative duties of a judge. So what sort of issue commitments are inconsistent with impartiality as the Supreme Court explained that term in *White?*

Here, that's an easy question to answer. Neither of the two statements alleged to violate Rule 2.10(B) promises to decide specific cases in a specific way. Neither statement promises to decide any cases for or against certain litigants. *See, e.g., Bauer*, 620 F.3d at 715 ("I will always rule in favor of the litigant whose income is lower, so that wealth can be redistributed according to the principles of communism."). Neither statement commits the candidate to disobey the law or to disregard the rights of the specific litigants before him.

"Neither" is the correct answer here. While the State could constitutionally prohibit at least some campaign speech under Rule 2.10(B), the campaign speech at issue here falls within the zone protected by *White*. As a result, the State's application of the Rule here fails strict scrutiny.

**II.   Mr. Barrow will suffer irreparable harm in the absence of a preliminary injunction.**

Harm is irreparable for purposes of a preliminary injunction when "it cannot be undone through monetary means." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981). Harms that touch upon the constitutional and statutory rights of political parties, candidates, and voters are generally not compensable by money damages and are therefore considered irreparable. *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion); *League of Women Voters v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986); *Ga. State Conference of the NAACP v. Fayette Cnty. Bd. of Comm'rs*, 118 F. Supp. 3d 1338, 1347 (N.D. Ga. 2015).

In this case, the irreparable nature of the injuries is obvious. The Special Committee's actions threaten to limit a candidate's campaign speech in the homestretch of the campaign. The State can't unring that bell. This *Winter* factor therefore weighs in favor of granting an injunction.

## III.   The balance of harms favors Mr. Barrow.

The third *Winter* factor requires the Court to consider the potential impact that the requested injunction might have upon the defendants, and to balance that potential with the considerable and irreparable harms that the plaintiff would suffer should his request be denied. There is no question that the balance of equities tips in the plaintiff's favor here.

Mr. Barrow has one shot in this campaign. If he loses, that's it. *See Weaver*, 309 F.3d at 1325 (holding that a special election was not an appropriate remedy for an unconstitutional restraint on judicial campaign speech). The State, on the other hand, can enforce its ethics code in the future if Mr. Barrow prevails and the court upholds the JQC's actions. This *Winter* factor weighs heavily in favor of an injunction.

## IV.   An injunction would serve the public interest.

The public interest in this case is clear. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius,* 723 F.3d 1114, 1145 (10th Cir. 2013) (en banc) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1131–32 (10th Cir. 2012)),

*aff'd* 134 S. Ct. 2751 (2014); *accord League of Women Voters of N.C.,* 769 F.3d at 247. The requested injunction will also ensure that voters in the upcoming judicial election have more information about their choices, not less. The requested injunction, if granted, would therefore favor the public interest.

## Conclusion

For the foregoing reasons, the Court should issue a temporary restraining order and preliminary injunction prohibiting the Special Committee from proceeding with its investigation of Mr. Barrow's campaign statements set forth in its May 1 notice letter.

Respectfully submitted this 9th day of May, 2024.


**/s/ Lester Tate**
Samuel Lester Tate, III
Georgia Bar No. 698835
Akin & Tate, PC
Post Office Box 878
11 South Public Square
Cartersville, Georgia 30120
(770) 382-0780
lester@akin-tate.com


**/s/ Bryan L. Sells**
Bryan L. Sells
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212 (voice/fax)
bryan@bryansellslaw.com


*Attorneys for the Plaintiff*

## Certificate Of Compliance

I hereby certify that the forgoing document was prepared in 13-point Century Schoolbook in compliance with Local Rules 5.1(C) and 7.1(D).

**/s/ Bryan L. Sells**
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212 (voice/fax)
bryan@bryansellslaw.com